[Cite as *Harbor Island Assn., Inc. v. Stecks Buckeye Storage Units, L.L.C.*, 2021-Ohio-2969.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Harbor Island Association, Inc.

    Appellee

v.

Stecks Buckeye Storage Units, LLC,
et al.

    Appellants

Court of Appeals No.  OT-20-012

Trial Court No.  2017 CVH 160

**DECISION AND JUDGMENT**

Decided:  August 27, 2021

* * * * *

Richard R. Gillum, for appellee.

Nicholas T. Stack and Mark D. Wagoner, for appellants.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common

Pleas, which granted plaintiff-appellee's emergency motion for appointment of receiver

without hearing.  For the reasons set forth below, this court reverses the judgment of the trial court.

## Background

{¶ 2} On May 12, 2017, and as amended on September 13, 2017, appellee Harbor Island Association, Inc. filed a complaint against defendants-appellants, Stecks Buckeye Storage Units LLC (also known as Steck's Buckeye Storage Units, LLC, hereafter "Stecks") and Rick J. Stechschulte, the owner of Stecks, plus 73 co-defendants.

{¶ 3} The complaint is captioned as an action for declaratory judgment, mandatory injunction, and money damages.  The plaintiff was seeking various declarations and relief relating to the Harbor Island bridge—which is the only means of ingress and egress for persons traveling to or from Harbor Island and lies within a parcel of real property owned by appellant Stecks Buckeye Storage Units, LLC.  In its amended complaint, the Association sought the following relief:

> **Count 1 (equity/ "fair share" formula):** The Association asserted that "each owner of real estate on Harbor Island has an obligation, in equity, to pay for their 'fair share' of the maintenance and/or replacement of the bridge" and the Association asked the court to "establish a formula" to determine what a fair share is between the various owners.

2.

**Count 2 (bridge should be replaced, not repaired):** The Association sought a declaration that "a new bridge is necessary and is the most efficient and cost effective" solution to the problem.

**Count 3 (Declaration of Restrictions):** The Association asserted that the Declaration of Restrictions for Harbor Island gave the Association "the right* * * to replace the bridge," and asked the court for a declaration to that effect. The Association expressly recognized that some defendants believed that the Association does not have that right under the Declaration of Restrictions.

**Count 4 (payment schedule):** The Association asked the court to determine the actual amount of replacement costs and "set up a schedule for the parties [to] make the necessary payments for the bridge repair by a date certain."

**Count 5 (appointment of a receiver):** The Association asked the court to appoint a receiver to (a) collect the "fair share" from each of the parties; (b) contract with companies for the repair or replacement of the bridge; (c) manage and oversee the bridge repair/replacement, and (d) "take all other necessary acts" to ensure the repair/replacement of the bridge.

{¶ 4} On February 5, 2019, the Association moved for summary judgment "as to Counts One and Two of Plaintiff's Complaint." In its motion, the Association submitted

various evidence through affidavit testimony and argued that "equity dictates * * * those property owners who benefit from the use of the real estate of improvements in common with other owners have an equitable obligation to pay for their fair share of the maintenance and replacement of [the bridge]" and that "[t]he bridge is clearly in need of replacement." Appellant Stecks opposed the motion, arguing—among other things—that the bridge is located upon its property, which is expressly exempted from the Declaration of Restrictions of Harbor Island because it is located within "Reserve A." For that reason, Stecks maintained that *it*—not the Association—had the right to control any repair or maintenance of the bridge on its property, and that it was willing to do so.

{¶ 5} In its reply brief, the Association did not directly address the argument that Stecks—rather than the Association—had the right to control the bridge work due to the "Reserve A" exemption of the Declaration of Restrictions. Instead, the Association reiterated that its motion for summary judgment was not "meant to be dispositive of the entire case, the purpose thereof is simply to establish the legal obligation to contribute their fair share, and to establish the condition of the bridge and the need for replacement."

{¶ 6} On July 25, 2019, the trial court determined that each of the landowners has an implied easement for ingress and egress over the bridge and, in equity, "each Defendant would be responsible for a fair share of the cost of maintenance and repair of the Bridge. Thus, there is no issue of material fact and Plaintiff is entitled to judgment as a matter of law as to Count One of Plaintiff's Complaint."

4.

{¶ 7} The next day, however, the trial court scheduled an evidentiary hearing for September 24, 2019 because, after discussion with counsel, the court determined that two issues "remain[ed] pending":  (1) "whether the bridge, which is the subject of this litigation, needs repaired or replaced" (i.e., Count Two, which was the subject of the summary-judgment motion) and (2) "the issue of apportionment of the costs" (i.e., the undecided portion of Count One, which was also the subject of the summary-judgment motion).  In other words, the trial court scheduled an evidentiary hearing to resolve the outstanding factual issues related to the Association's motion for summary judgment on Count One and Count Two of the amended complaint, despite having already granted summary judgment in favor of the plaintiff on Count One.

{¶ 8} On September 24, 2019, the trial court held the evidentiary hearing, and considered evidence regarding whether the bridge needs to be repaired or replaced (i.e., Count Two) and the apportionment of costs for such repair or replacement (i.e., the unresolved portion of Count One).  All the evidence and testimony was limited to these two issues.

{¶ 9} On January 16, 2020, the trial court issued its post-hearing judgment.  It began its ruling by stating that "[t]his cause comes before this Court after a hearing on two issues before the Court: (1) whether the Harbor Island Bridge needs to be repaired or replaced and (2) the allocation of the cost between the owners."  The trial court accepted the testimony of the Association's expert witness, Jeffery Yoder, and concluded that "a

5.

replacement of the Harbor Island Bridge is necessary." The trial court also concluded 61.05% of the costs to replace the bridge should be allocated to the Association, 6.32% to the Waterford Way subdivision properties, 8.42% to the Nor'Easter Cove condominium properties, and 24.21% to the Nor'Easter club.[1]

{¶ 10} Thus, the January 16, 2020 judgment resolved the remaining factual issues that were raised by the Association's motion for summary judgment on Count One and Count Two. As the Association itself stated in its reply brief in support of summary judgment, its motion was not "meant to be dispositive of the entire case, the purpose thereof is simply to establish the legal obligation to contribute their fair share, and to establish the condition of the bridge and the need for replacement"—which were the exact issues that the trial court decided on January 16, 2020 after evidentiary hearing. So, as of January 16, 2020 Count Three (regarding who had "the right * * * to replace the bridge" under the written Declaration of Restrictions) and Count Four (seeking "a schedule for the parties to make necessary payments for the bridge repair by a date certain") and Count Five (seeking the appointment of a receiver) remained pending.

{¶ 11} Then on May 4, 2020, pursuant to R.C. 2735.01(A)(4) and Civ.R. 66, appellee filed an emergency motion for appointment of receiver without hearing.

---

[1] The trial court added the Nor'Easter club to its apportionment order on May 22, 2020 via a nunc pro tunc entry.

6.

{¶ 12} Three days later, on May 7, 2020, by way of an amended nunc pro tunc judgment entry, the trial court granted appellee's motion and made nine findings of fact to support its decision:

1. This Court issued a Decision and Judgment Entry on January 20, 2020 (sic) which established the Bridge in question as at or near the end of its useful life and is in need of replacement. The Bridge as it currently stands, poses a substantial risk to the health and safety of the residents and guests of Harbor Island generally.

2. The Plaintiff, Harbor Island Association has a right to replace the bridge under the terms of the subdivision declaration which was originally filed for record in Deed Vol 207 at page 679 of the Ottawa County Common Pleas Court, and subsequent amendments and additions to the Plat.

3. Defendant Stecks Buckeye Storage Units, LLC claims a right to replace the bridge due to his ownership of the fee title to the real estate upon which the bridge is located.

4. To ensure that the bridge is completed by the 2021 season, without significant interruption, the Bridge Design must begin in May of 2020. Delaying the Bridge design and replacement could place the Harbor Island community, as a whole, in danger of Bridge failure.

7.

5.  It will be more economical for all parties hereto to pursue a single bridge replacement, rather than pursuing competing bridge replacement ideas, and litigating them.

6.  Jeffrey Yoder, PE of Poggemeyer Design Group, Inc. is qualified to design the bridge and provide general oversight of the construction of the new Bridge.

7.  Until Bridge Design is undertaken, it is unknown whether it is economically more feasible to construct a bridge along-side of the current bridge and reroute the easements/plats for the access to the island or to install a temporary bridge along-side the existing bridge and construct the new Bridge in same location as the existing Bridge.

8.  The wing wall repaired by Defendant Steck's continues to move. The further the wing wall moves out of plumb, the danger of bridge failure increases exponentially, and

9.  There is an overriding public safety interest in ensuring a new safe bridge is constructed.

{¶ 13} The trial court attempted to resolve Count Three when it concluded that the the Association "has a right to replace the bridge under the terms of [the Declaration of Restrictions]. However, the record demonstrates that the trial court was never presented with any motion, argument, or evidence regarding the disputed issue of *who* has the

8.

"right to replace the bridge" under the Declaration of Restrictions. Indeed, the Association's emergency motion to appoint receiver did not address the issue at all. Rather, the Association merely reiterated that it had "prevailed on both the issue of necessity of replacement of the Bridge as well as apportionment of the costs thereof," and argued that the appointment of a receiver was the next logical step and most efficient means to accomplish the timely replacement of the bridge. But the Association's motion missed a critical step: the need to resolve the disputed issue of *who* has the right to undertake the replacement work, i.e. Count Three.

{¶ 14} It is important to remember that when Stecks attempted to raise this issue in response to the Association's motion for summary judgment on Counts One and Two— by arguing in its opposition brief that Stecks (not the Association) had the authority to replace the bridge on its property because "Reserve A" is exempted from the Declaration of Restrictions upon which the Association relies—the Association did not respond to the merits of that argument but, essentially, implied that issue was for another day. From that point forward, all of the argument and evidence relating to the summary-judgment motion and the corresponding evidentiary hearing was limited to Counts One and Two. Simply put, Count Three was barely mentioned, let alone meaningfully addressed, at any time before the trial court's ruling on May 7, 2020.

{¶ 15} The trial court then proceeded to appoint a receiver "with all powers and authorities vested in a receiver pursuant to chapter 2735 of the Revised Code, and all

9.

powers and duties described herein," including to contract for the design and construction of a new bridge and additional services necessary and customary in the construction process, to assess and collect from all parties and Harbor Island property owners their "fair share of the costs of the bridge design, construction, construction management, escrow fees, receiver fees and court costs of this action, obtain any necessary insurance policies, as well as any other costs or expenses the Receiver deems necessary for completion of Bridge Construction," and to take all actions necessary in the receiver's opinion in furtherance of the trial court's order.

{¶ 16} On May 22, 2020, the trial court issued two nunc pro tunc judgment entries—one of which added Civ. R. 54(B) language to its January 16, 2020 post-hearing judgment, while the other added Civ.R. 54(B) language to its May 7, 2020 judgment appointing a receiver.

## Appeal

{¶ 17} Appellants filed this appeal setting forth three assignments of error:

1. The Trial Court erred as a matter of law by appointing a receiver pursuant to R.C. 2735.01(A)(4) prior entry of a final judgment.

2. The Trial Court abused its discretion, and erred as a matter of law, by denying Appellants an opportunity to be heard on Appellee's request for the appointment of a receiver.

3. The Trial Court abused its discretion by granting Appellee's request for the appointment of a receiver without clear and convincing evidence demonstrating the need for a receiver and by deciding ultimate issues without notice.

## Final Judgment

{¶ 18} We find the assignments of error are related and they will be considered together for ease of discussion. Appellants argue the trial court erred by appointing a receiver pursuant to R.C. 2735.01(A)(4), which first requires the existence of a final judgment. Appellants argue that at the time of the trial court's decision appointing a receiver, "at least two claims remained pending": Count Three and Count Four. In response, appellee argues Counts Three and Four "are essentially rendered moot by the appointment of a Receiver.

{¶ 19} R.C. 2505.02(B)(1) describes the type of final order relevant to this appeal: "An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment." "'For an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court.'" *State ex rel. O'Malley v. Russo*, 156 Ohio St.3d 548, 2019-Ohio-1698, 130 N.E.3d 256, ¶ 18, quoting *Hamilton Cty. Bd. of Mental*

11.

*Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 153, 545 N.E.2d 1260 (1989). "R.C. 2505.02 does not require a trial court to indicate its express intent to create a final order. What does matter is whether the order itself satisfies any of the circumstances listed in R.C. 2505.02(B)." *Id.* at ¶ 17.

{¶ 20} Since we have found that Counts Three, Four and Count Five remained pending as of the January 16, 2020 decision, that order was not a final, appealable order under R.C. 2505.02(B).

**Appointment of the Receiver**

{¶ 21} Appellate review of a trial court's decision on the appointment of a receiver is for an abuse of discretion. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73, 573 N.E.2d 62 (1991). Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 22} On May 4, 2020, the Association filed an emergency motion for appointment of receiver without a hearing. In its motion, the Association argued that it had "prevailed on both the issue of necessity of replacement of the Bridge as well as the apportionment of the costs thereof" and "[t]he most efficient and equitable manner to implement this Order in a safe and efficient manner is to appoint a Receiver to carry the Court's Order." The Association argued that there was an "urgent need to replace the

Bridge during the off-season" given the "seasonable nature of the bridge usage" and, therefore "the process must be in early to mid-May of this year to ensure minimal disruption to the parties hereto and to the members of the Nor'Easter Club." The Association did not argue why it had the right to replace the bridge under the Declaration of Restrictions (i.e., Count Three)—indeed, it did not address the Declaration of Restrictions, or acknowledge the parties' dispute regarding their respective rights under that document. Nor did the trial court address this continuing dispute that appellee Stecks—rather than the Association—had the right to control the bridge work due to the "Reserve A" exemption of the Declaration of Restrictions.

{¶ 23} Three days later, on May 7, 2020, the trial court granted the Association's motion for receiver—not only without a hearing, but without allowing appellants *any* opportunity to be heard on the motion whatsoever. Moreover, the trial court included a "finding of fact" in its May 7, 2020 decision stating that the Association "has a right to replace the bridge under the terms of [the Declaration of Restrictions]"—thereby resolving Count Three—even though the Association did not move for judgment on that claim, and even though appellants were given no opportunity to respond.

{¶ 24} On May 22, 2020, the trial court issued two nunc pro tunc judgment entries—one of which added Civ. R. 54(B) language to its January 16, 2020 post-hearing judgment, while the other added Civ.R. 54(B) language to its May 7, 2020 judgment appointing a receiver.

13.

{¶ 25} The addition of the Civ. R. 54(B) language to the May 7, 2020 decision—which did not resolve all claims because Count Four remained pending—was appropriate because court appointment of a receiver is a final order under R.C. 2505.02(B)(2). *Debartolo v. Dussault Moving, Inc.*, 8th Dist. Cuyahoga No. 96667, 2011-Ohio-6282, ¶ 8, quoting *Hummer v. Hummer,* 8th Dist. Cuyahoga No. 96132, 2011–Ohio–3767, ¶ 8 ("'It is well settled that an order appointing a receiver is a final, appealable order that affects a substantial right in a special proceeding.'"). Moreover, "where additional claims remain pending, an order appointing a receiver is a final appealable order only if the trial court makes an express determination under Civ.R. 54(B) that there is no just reason for delay." *McCarthy v. Anderson*, 5th Dist. Licking No. 17 CA 33, 2018-Ohio-1994, ¶ 23; *see also Koehler Bros. v. Swihart*, 3d Dist. Hancock No. 5-78-16, 1979 WL 207934, (May 1, 1979).

{¶ 26} Nevertheless, in this case, the process utilized by the trial court to appoint the receiver was flawed for several reasons.

{¶ 27} The Ohio Supreme Court has held that "[t]he appointment of a receiver * * *, cannot be lawfully made without notice, unless the delay required to give such notice will result in irreparable loss." *Railway Co. v. Jewett*, 37 Ohio St. 649 (1882), paragraph two of the syllabus.

14.

{¶ 28} While the testimony given at the September 24, 2019 hearing was directed at the necessity of repairs or replacement of the bridge and the apportionment of costs, none was directed at the urgency of the appointment of a receiver to achieve either goal.

{¶ 29} Although its pleading was captioned "Emergency Motion for Appointment of Receiver" the motion itself argued that a receiver was the most efficient manner to implement the court's January 20, 2020 order. Specifically, the "oversight, decision making and collection of assessments necessary for the replace of the private bridge."

{¶ 30} Civil Rule 6(C) states:

(C) Time: Motions.

(1) Motion Responses and Movants' Replies Generally. Responses to a written motion, other than motions for summary judgment, may be served within fourteen days after service of the motion. Responses to motions for summary judgment may be served within twenty-eight days after service of the motion. A movant's reply to a response to any written motion may be served within seven days after service of the response to the motion.

(2) Motions Prior to Hearing or Trial. Unless a different period is fixed under these rules or by order of the court, a written motion for purposes of a hearing that is not a trial shall be served no later than fourteen days prior to the hearing, and a written motion for purposes of a trial shall

be served no later than twenty-eight days prior to the start of trial. Responses to such motions may be served as provided by Civ.R. 6(C); however, a movant's reply to the response is not permitted.

(3)  Modification for Good Cause Upon Motion. Upon motion of a party in an action, and for good cause, the court may reduce or enlarge the periods of time provided in divisions (C)(1) and (C)(2) of this rule.

{¶ 31} Thus, this rule permits fourteen days for a respondent to reply or otherwise respond to the motion, unless the trial court found good cause to otherwise reduce or enlarge the period.

{¶ 32} We are also mindful of the necessity of compliance with the Local Rule of the Ottawa County Court of Common Pleas. Specifically, Local Rule 20.05(C) Motions for temporary restraining order or for other urgent relief, which states, in pertinent part:

Such motions will be heard ex parte only upon a showing that an extraordinary hardship will result to the moving party by any delay in the proceedings and in appropriate cases a bond will be required.

{¶ 33} The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution, require that every party to an action must be afforded "'a reasonable opportunity to be heard after a reasonable notice of such hearing.'" *Ohio Valley Radiology Assoc. Inc. v. Ohio Valley Hosp. Ass'n.* (1986), 28 Ohio St.3d 118, 125, quoting *State ex rel. Allstate Ins. Co.* (1936), 130 Ohio St. 347,

16.

paragraph five of the syllabus. Thus, in order to satisfy constitutional due process, some form of reasonable notice of a trial date is required. *Id*. at 124. In the absence of a local rule governing the provision of notice of a trial date, constructive notice by the setting down of that date on the court's docket may satisfy the constitutional mandate. *Id. See also Nalbach v. Cacioppo,* 11th Dist. Trumbull No.2001-T-0062, 2002-Ohio-53, ¶ 24; *Grice v. Herbert Laronge, Inc* (May 25, 1989), 8th Dist. Cuyahoga Nos. 55333, 55359. *Fahey v. Eschrich*, 6th Dist., Ottawa No. OT-06-012, 2006-Ohio-5619, ¶ 9

{¶ 34} The record of the case before us discloses that appellant never received actual notice of the final hearing/trial on the merits of appellee's petition. Because such notice is required under Ottawa County's local rules, appellant was denied his constitutional right to due process.

{¶ 35} Accordingly, we find that the trial court abused its discretion in granting the emergency motion for an appointment of a receiver without a hearing. Appellants' assignments of error are found well-taken.

## Conclusion

{¶ 36} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is reversed. This matter is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                      _____
                                                        JUDGE

Christine E. Mayle, J.

Myron C. Duhart, J.                       _____
CONCUR.                                                JUDGE

                                          _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.