[Cite as *Monroeville v. Gray Matter Advisors, Inc.*, 2026-Ohio-2110.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

| | |
|---|---|
| Village of Monroeville | Court of Appeals No. {39}H-25-012 |
| Appellee | Trial Court No. CVH 20240529 |
| v. | |
| Gray Matter Advisors, Inc., et al. | **DECISION AND JUDGMENT** |
| Appellants | Decided: June 5, 2026 |

* * * * *

James C. Barney, for appellee.

Eric H. Zagrans, for appellants.

* * * * *

**ZMUDA, J.**

**{¶ 1}** This is an appeal from the March 11, 2025 judgment of the Huron County Court of Common Pleas by appellants Gray Matter Advisors, Inc. ("Advisors"), Anthony Davian/aka Anthony James ("Davian"), and Matthew Kluger ("Kluger") (collectively, "appellants"). Appellants challenge the trial court's judgment granting the motion to amend the scope of the receivership of appellee, the Village of Monroeville ("Monroeville"), and the order holding Davian's and Kluger's respective motions to enforce their indemnification and advancement agreement in abeyance.

## I. Background and Procedural History

{¶ 2} The matters on appeal are limited, relating only to the appointment of a receiver over appellants' business entities, and the trial court's decision to hold the motions of Davian and Kluger in abeyance, deferring ruling on their indemnity and advancement agreements. Additionally, Monroeville filed a motion to dismiss the appeal, arguing appellants failed to timely appeal from a final order.

{¶ 3} This appeal is interlocutory, filed prior to the trial court's adjudication of any of the underlying claims asserted by Monroeville against appellants. Thus, to the extent we reference allegations or evidence proffered in support of the appointment of a receiver, this decision is limited to the issues presented on appeal and does not constitute a finding as to the facts or allegations.

{¶ 4} In addition to the unresolved, underlying claims, we note other litigation preceding this case that involved some of the appellants. This other litigation includes the suit between Davian and David Handel ("Handel"), Davian's former business partner in Gray Matter Holdings, Inc. ("Holdings") and its subsidiary Gray Data, Inc. ("Gray Data"). Prior to Monroeville's complaint and request for a receiver, Handel, along with Holdings and Gray Data, filed suit against Davian, seeking to remove Davian as a director and officer of the companies, and alleged claims for tortious interference with contract.[1] As a result of the ownership dispute between Davian and Handel, Davian lost

---

[1] In March 2025, the Handel suit was transferred to the Huron County Common Pleas court as a companion case, and it remains pending.

2.

control over Holdings and its subsidiaries for a period of time, relevant to the case on appeal.

{¶ 5} In early August 2024, a case was filed in the Mahoning County Common Pleas Court case by Gridline Digital Infrastructure, LLC ("Gridline Digital") and Sovereign Power, Inc. ("Sovereign Power"), based on activities at a Youngstown data center operated by Davian, Kluger, and Gray Data.[2] Gridline Digital and Sovereign Power alleged Davian and Kluger "hijacked" Gray Data and used Gray Data to convert cryptocurrency mining equipment of the plaintiffs. They further alleged that Davian and Kluger expressed an intent "to sell and dispose of the Stolen Property" belonging to Gridline Digital and Sovereign Power. The plaintiffs in that case requested immediate appointment of a receiver, and the Mahoning Court of Common Pleas appointed Mark Dottore as Receiver for Gray Data.

{¶ 6} In the present matter, Monroeville's claims arose following the failure to make payment by Holdings/Gray Data/Advisors pursuant to an Energy Service Agreement ("ESA") executed by Monroeville and Davian in December 2022. Davian executed the agreement on behalf of Holdings and Gray Data using the name "Anthony James." The ESA pertained to Monroeville's supply of electricity to the Monroeville data center, soon to be established by Holdings and Gray Data.

---

[2] There were additional corporate entities named in the suit, but Holdings was not a party in the Mahoning County case.

3.

{¶ 7} In August 2023, the parties executed a Transaction Confirmation providing specific terms for Monroeville's supply of electricity to Holdings and Gray Data under the ESA, for the period November 1, 2023, to October 31, 2026, at a fixed price of $47.89 per MWh. At the time this document was executed, Handel was in control of Holdings and Gray Data, signing on behalf of the companies. Davian did not sign this agreement and considered this agreement a "hedge agreement" with unfavorable terms that he would not have accepted.

{¶ 8} On December 21, 2023, after Davian regained control of Holdings and its subsidiaries, he directed Holdings in filing a voluntary petition in bankruptcy court seeking relief under Chapter 11 of the United States Bankruptcy Code in Youngstown, Ohio. The bankruptcy petition was dismissed on January 12, 2024.

{¶ 9} Around March 2024, with Davian in control, Holdings and Gray Data began operating the Monroeville data center using truck trailers to house computers and equipment for cryptocurrency mining. Some of the computers and equipment used at the site had been removed from the Youngstown data center to the Monroeville site. The data center began leasing or "co-locating space" with third parties engaged in crypto mining, including Decimal Digital Currency, LLC ("Decimal Digital"), using the electricity provided by Monroeville pursuant to the ESA and the hedge agreement. Holdings/Gray Data paid for electric service from March through May 2024.

{¶ 10} Beginning May 2024, Holdings/Gray Data asked Monroeville to begin sending invoices to Advisors for amounts due under the ESA. Davian incorporated Advisors in Wyoming in 2023, but he did not register the company as a foreign

4.

corporation in Ohio. Monroeville complied and started invoicing Advisors for the electricity purchased and used by the data center. However, the checks issued by Advisors were returned for insufficient funds, and despite attempts by Monroeville to obtain payment, Advisors/Holdings/Gray Data did not pay for electric services for the months of April through July 2024, with the unpaid invoices totaling $769,056.36.[3]

{¶ 11} On August 27, 2024, Monroeville filed suit against Davian, Kluger, Advisors, and Holdings, alleging claims for breach of contract, fraud, fraudulent transfer, and asserting alter ego liability. Monroeville sought to pierce the corporate veil of Gray Data and permit it to "reach the assets of Holdings, Advisors, Davian and Kluger to satisfy the debts owed to [Monroeville] and other creditors."[4]

{¶ 12} In addition to the complaint, Monroeville filed an emergency, ex parte motion for appointment of a receiver over Advisors, Holdings, and the wholly owned subsidiaries of Holdings. In the motion, Monroeville referenced the Youngstown litigation involving Davian, Kluger, and Gray Data, arising from the cryptocurrency operations at the Youngstown data center. Monroeville alleged that Davian and Kluger had relocated their cryptocurrency mining operation from Youngstown to Monroeville and relocated equipment belonging to third parties having contracts with Gray Data from Youngstown to the Monroeville data center. Monroeville further argued that Davian,

---

[3] Decimal Digital, one of the co-located tenants, did pay for its portion of electricity directly to Monroeville.

[4] The complaint also names the Davian Children Trust and John Does A-Z as defendants

5.

Kluger, and Gray Data left Youngstown with an outstanding bill for electrical service in the amount of $2,446,093.86. The Mahoning County Common Pleas Court appointed Dottore as Receiver over Gray Data in that case. Because the Receiver had been appointed for Gray Data in Mahoning County, Monroeville did not include Gray Data in its complaint.

{¶ 13} Monroeville further alleged that the Receiver appointed over Gray Data attempted to enter the Monroeville data center, but he was informed that Gray Data did not own any of the assets, and instead, Advisors owned the assets and operated the facility. However, the Receiver noted evidence demonstrating Gray Data was operating at the data center in Monroeville, and the Receiver believed Davian and Kluger were attempting to transfer all assets of Gray Data to Advisors. Based on the initial information gathered by the Receiver, it appeared that Davian and Kluger were manipulating the computers at the Monroeville data center to divert a percentage of the cryptocurrency mined by the co-location tenants.

{¶ 14} Monroeville sought appointment of Dottore as Receiver in their case, noting the pending litigation over ownership and control of Holdings, which, in turn, owned Gray Data, and the appointment of the same receiver in the separate Mahoning County case over Gray Data. In arguing in favor of an immediate, ex parte appointment and seeking the appointment of Dottore as receiver in the present case, Monroeville noted that Davian and Kluger barred the Receivers' access under the Mahoning County receivership and claimed Advisors, not Gray Data, held the lease to the property. Monroeville argued that Advisors and Holdings/Gray Data are insolvent based on the

6.

failure to pay creditors relative to the Youngstown and Monroeville data centers, including over $2.4 million for electrical service for the Youngstown data center. Monroeville argued that additional amounts are owed to Monroeville and other creditors who provided materials and services in establishing the Monroeville facility.

{¶ 15} Beyond unpaid bills, Monroeville noted the prior criminal history of both Davian and Kluger involving fraud and argued that Davian's and Kluger's conduct in appropriating the property of the co-location tenants constituted fraud, theft, and conversion. According to Monroeville, Davian and Kluger used Advisors to "hijack" assets of Holdings and Gray Data for the personal gain of Davian and Kluger. Monroeville argued that, without immediate and complete control of the production network, there was an imminent risk that Davian and Kluger could further destroy and degrade the computer hardware and continue to deprive the co-location parties by diverting cryptocurrency to "cryptowallets" under the exclusive control of Davian and Kluger. Monroeville argued that the appointment of the Receiver was appropriate pursuant to R.C. 2735.01(A)(6) and (7).

{¶ 16} On August 27, 2024, the trial court held a hearing on the emergency, ex parte motion for appointment of receiver, with Mr. Dottore present at the hearing. At the start of the hearing, counsel for Monroeville informed the trial court that he emailed a copy of Monroeville's complaint, the ex parte motion, and the proposed ex parte order that morning to the counsel for Davian, Kluger, and Advisors in the Mahoning County receivership case. Although Monroeville's counsel had not received any response, he believed the notice was received because "all of a sudden, in Mahoning County Common

7.

Pleas, there is a pretrial conference this afternoon at 2:30; so I'm pretty sure he knows what's going on."

{¶ 17} After ensuring notice was sent and finding the supporting brief "set forth sufficient facts to determine…there would be necessity for an emergency order be placed," the trial court determined that appointment of a receiver was in the best interest of all parties and necessary to protect against the alleged imminent danger of insolvency, pursuant to R.C. 2735.01(A)(6), and in the interest of equity to preserve, manage, and dispose of assets and prevent waste, pursuant to R.C. 2735.01(A)(7). The trial court granted the ex parte motion and appointed Mr. Dottore as Receiver for Advisors and Holdings and its subsidiaries, not including Gray Data, the subject of receivership in the Mahoning County case.

{¶ 18} On August 30, 2024, the trial court granted the motion to intervene as a plaintiff filed by Decimal Digital, a co-located tenant of the Monroeville data center. Decimal Digital filed a verified complaint seeking emergency relief and monetary damages against Davian and Kluger. Decimal Digital alleged that Davian and Kluger "hijacked" Gray Data and Holdings by forming Advisors "to steal, use and convert Decimal's cryptocurrency mining equipment, cash and cryptocurrency," and other property. Decimal Digital alleged that Davian and Kluger removed its property from the Youngstown facility to the Monroeville data center, used Decimal Digital's purchased

8.

electricity, and stole bitcoin generated by Decimal Digital's equipment at the Monroeville data center.[5]

{¶ 19} On September 13, 2024, Advisors, Davian, and Kluger appeared, through counsel, and filed a motion to vacate the ex parte order appointing the Receiver and terminate the receivership, requesting an evidentiary hearing. They did not appeal the trial court's ex parte appointment of the Receiver.

{¶ 20} Additionally, Davian and Kluger each filed motions to enforce indemnification and advancement agreements. The agreements were executed on March 17, 2023 between Davian and Advisors and between Kluger and Advisors, seeking reimbursement from Advisors, part of the receivership estate, for their legal fees in defending in the action. [6]

{¶ 21} The Receiver opposed the motions that sought to enforce the indemnification agreements against Advisors, and on November 8, 2024, the Receiver filed a motion for an order amending the receivership to add Gray Data and its assets as part of the receivership estate. In the motion, the Receiver identified the Youngstown, Ohio data center and real property in North Royalton, Ohio as relevant to the

---

[5] In addition to Decimal Digital Currency, LLC intervening as plaintiff, Handel filed a notice of claims against the receivership estate. Gridline and Sovereign Power also appeared to assert a third-party interest as creditors.

[6] Based on the record, it appears Davian and Kluger filed no responsive pleading, addressing the specific claims alleged by Monroeville, or the claims alleged in Decimal's verified complaint. Additionally, counsel for Advisors did not seek to represent Holdings or any of its subsidiaries.

9.

proceedings,[7] and stated the Receiver discovered all but the Monroeville data center was abandoned. The Receiver further determined that the Monroeville data center contained assets of both Gray Data and Advisors, along with assets owned by other receivership entities. The Receiver determined that Gray Data and Advisors intermingled corporate assets, Advisors had taken advantage of corporate opportunities belonging to Gray Data and Holdings, and the Receiver sought to consolidate all future proceedings in the present case. The Mahoning County receivership had been terminated in the Mahoning County case in October 2024.

{¶ 22} The trial court held a hearing on the motion to terminate the receivership and the motions to enforce indemnification agreements on November 14 and 15, 2024, with additional hearing on November 21, 22, and 25, 2024, and January 3, 2025. The trial court framed the issues at the hearing on November 14, 2024 as follows:

> We're scheduled this morning for a hearing with regard to two issues, I understand, that the receivership assets being used to pay for the defense in the matter; also whether the legal requirements for emergency setting up of the receivership were satisfied or have been satisfied at this point.

The trial court further noted that, in addition to the motion to terminate the receivership, the Receiver requested to amend the receivership to include Gray Data as an additional entity, omitted from the initial emergency motion.

---

[7] The North Royalton property was described in testimony as providing office space for the various Gray Matter business entities.

10.

{¶ 23} Appellants first argued that the indemnification agreements must be enforced to permit Davian and Kluger a defense. Appellants argued that Davian and Kluger entered into valid indemnification agreements which provided for advances of expenses incurred in connection with a proceeding, and therefore, they were entitled to have their attorney fees paid by the Advisors, according to the agreements.

{¶ 24} In response, the Receiver argued that, to the extent the indemnification agreements created a contractual right for payment of attorney fees, Davian and Kluger should be treated as any creditor of the receivership estate. However, the Receiver also argued that Davian and Kluger have been accused of the type of wrongdoing that was exempted from indemnification under the agreements. Therefore, the Receiver argued, they are not entitled to have their attorney fees paid by the receivership estate in advance, prior to determination of the underlying fraud and other claims asserted by Monroeville against Davian and Kluger.

{¶ 25} As to the order appointing Receiver, appellants argued that, while the trial court has discretion in appointing a receiver as an exercise of equity powers, the ex parte appointment, without considering "evidentiary materials from both sides," constituted an abuse of that discretion. Appellants' counsel, however, did acknowledge he was provided notice of the emergency motion, but argued the notice was not adequate to permit appearance at the hearing.

11.

{¶ 26} As an initial matter, appellants sought a decision, setting aside the ex parte appointment, prior to proceeding to hearing and admitting new evidence to support the amended appointment requested by the Receiver. This prompted the following exchange between appellants' trial counsel and the trial court.

> **Counsel:** … It's our position that our motion to vacate the ex parte order and to dissolve the receivership should in the first instance be decided on the record that was before the Court at the time the order was entered. And only if that motion's denied based on that record, should the Court then proceed to do an evidentiary hearing on whether there is, in fact, support for it.
> Because we feel that, two things, we feel that the appropriate legal framework for whether or not the ex parte order should be vacated is based solely on the record that was before the Court at that time, and we feel that the Receiver or the moving party, by the way, should not be allowed to justify the appointment of the Receiver with any events or information or developments that have happened during the receivership. It should be at the time that the request was made to do so to begin with.
> In other words…
>
> **The Court:** Let me ask you this: Would that be true if the evidence they intend to introduce would support the allegations they made in the initial filing?
>
> **Counsel:** Yes. Not because that evidence would be inadmissible. I'm not suggesting that at all. I think it would be admissible, by the way, but because the Court should not give either the moving party or the Receiver the benefit of moving for a receivership, supporting a receivership with the receivership already being in place, in this case, for a number – for over a month and a half.
> …
>
> **The Court:** If the activities that take place subsequent to the filing and granting of the order support the allegations that were made in the order, and the question is whether or not the allegations were sufficient at the time for the placemen of Receiver, could that not be seen as relevant?
>
> **Counsel:** Yes. But Your Honor, and I understand an efficiency concern on the part of the Court. I would get that. But I think as a matter of law, it should not be heard – if they didn't make a sufficient showing at the

12.

end of August, then there should have been no receivership. You can't undo it except you can dissolve it.

Now if they can support it by an evidentiary showing after the fact when they don't have the benefit of a receivership in place, yes, they can use that, those facts or those – that information to support the entry of another order granting the receivership, if they do that, but that evidence would then be subject to being tested on cross-examination, subject to the defense putting on their own evidence. All of which didn't happen at the end of August.

So we're asking the Court, and we think this is the appropriate framework for it, to consider the propriety of the order as it existed at the end of August. If the Court then denies our motion, fine; then we proceed, but if the Court grants our motion, then it dissolves the order – vacates the order rather, and dissolves the receivership, and then takes up the question of now can the moving party and the Receiver support the entry of an order based on today's circumstances, which would necessarily include everything that's happened since August 27th to today.

**The Court:** It may be a small difference here, but I'm saying that if, in fact, what's happened subsequently verifies the allegations that they made at the initial offering and shows them to have been correct at that time … why would that not be able to be offered in support at this time?

**Counsel:** It could.
… I'm saying it could, but we're asking the Court as a matter of law to vacate your order, because of what you were not presented with on August 27th.

{¶ 27} Essentially, appellants' trial counsel challenged the ex parte receivership order, having never appealed the order, and argued it lacked sufficient evidence and must be vacated, dissolving the current receivership. At the same time, counsel did not argue that dissolution of the ex parte order prevented entry of a new order appointing the Receiver. As to a new receivership, however, appellants argued that the evidence would not demonstrate the necessity or the irreparable harm, justifying appointment of a receiver.

13.

{¶ 28} The Receiver and Monroeville argued that an ex parte receivership was appropriate, based on demonstration of irreparable harm, and at the time of Monroeville's request for an emergency ex parte order, the Receiver was in control of all assets except for those assets located at the Monroeville data center. They argued that Davian and Kluger prevented the Receiver's access at the Monroeville site. Furthermore, the business entities were all insolvent, unable to pay the creditors. Davian and Kluger, moreover, were engaged in fraudulent activities, and there was a real danger that Davian and Kluger were in the process of absconding and moving the assets out of the Receiver's reach.

{¶ 29} Following the hearing, the parties filed memoranda and closing argument, with proposed findings of fact and conclusions of law.

{¶ 30} On March 11, 2025, the trial court entered its order appointing the Receiver, and by separate entry, the trial court set forth its findings of fact and conclusions of law, adopting the proposed findings and conclusions proffered jointly by Monroeville and the Receiver.

{¶ 31} As part of its findings of fact, the trial court noted that appellants were in default of payment to Monroeville, at the time of hearing, in the amount of $1,175.733.40, and had significant amounts owed to other creditors, including the more than $2.4 million owed in Youngstown for electric service in the Mahoning County case. Added to the other claims for payment related to the Monroeville data center, the trial court found appellants owed approximately $4,752,814.42 to creditors and "provided no evidence supporting the proposition that they have resources sufficient to pay those

14.

obligations." Instead, the trial court noted that appellants "admitted their inability to pay their bills when due."

{¶ 32} In addition to the amounts owed, the trial court noted that Davian "claimed to be incapable of producing financial records required to be produced by the Appointment Order" and failed to produce any financial records that would demonstrate Advisors was solvent. Furthermore, as the electric service disconnect notice from Monroeville was enjoined by the Appointment Order, dissolving the receivership would result in immediate shut-off of electrical service to the Monroeville data center, eliminating "potential revenue from crypto mining operations at that site as a source of payment" toward appellants' debt, harming creditors of the receivership.

{¶ 33} In its conclusions of law, the trial court determined there was clear and convincing evidence of imminent irreparable harm to creditors, particularly Monroeville, requiring the issuance of the ex parte order in August 2024. The trial court further determined that a request for full hearing was made, and scheduled, affording the required due process to Davian, Kluger, and the business entities. As a separate basis, the trial court also noted that Advisors failed to register as a foreign corporation and obtain a license to operate in the state of Ohio, which resulted in Advisors' forfeiture of corporate rights under Ohio law, in addition to the fraud allegations and indices of insolvency,

{¶ 34} The trial court further found that there was insufficient evidence proffered, satisfying the burden necessary to demonstrate the receivership should be terminated. Specifically, the trial court found the evidence did not show that Davian, Kluger, or the

15.

business entities had the assets to satisfy the outstanding debt, there had been no payment of the debt, and there was no evidence to refute the prima facie showing of insolvency.

{¶ 35} The trial court's March 11, 2025 order appointing the Receiver identified the entities included in the receivership estate that added Gray Data, included all required findings, and outlined the Receiver's duties and authority.[8] The March 11 order recited the procedural history, including the motion to amend the appointment order, and appointed Dottore as Receiver as in the best interest of all parties and appropriate and necessary to protect against the alleged imminent danger of insolvency of the business, R.C. 2735.01(A)(6) and in the interest of equity to preserve, manage, and dispose of the assets and prevent waste, R.C. 2735.01(A)(7).

{¶ 36} The March 11 order appointing the Receiver authorized the Receiver to take control and possession of the assets, wherever located, and granted the Receiver authority over operation and management of the business and assets. The March 11 order granted the Receiver discretion in performing pursuant to the terms of any existing contracts executed by the business, with authority to "reject contracts not deemed to be in the interest of creditors of the estate." The order also authorized, but did not require, the Receiver to "defend actions against the Assets or the Business," "in his sole discretion." The Receiver also had authority to negotiate and effect sale of all or any portion of the assets to pay creditors.

---

[8] Additionally, the trial court added Gray Matter Group, another wholly owned subsidiary of Holdings, and corrected a scrivener's error misidentifying Gray Matter Ytown, LLC, another subsidiary.

16.

{¶ 37} The March 11 order appointing the Receiver further enjoined any discontinuing of service to the Receiver and receivership estate "based on non-payment of such taxes or utilities prior to the date of this Order and from attempting to collect taxes and utility charges from the Receiver pre-dating the date of this Order." Creditors, claimants, and parties in interest were also enjoined from "commencing or continuing" any suit to foreclose a lien or enforce any claim against the receivership assets "in any court."

{¶ 38} The March 11 order appointing the Receiver also required the business entities within the receivership, and the agents, officers, directors, shareholders, members, employees, representatives or creditors of the businesses to cooperate in providing access to the Receiver regarding the books and records, assets, computer storage, and computer system for the business entities. Those agents, officers, directors, etc. were also prohibited from acting on behalf of the business entities or interfering with the Receiver's acts in any way by "wasting, disposing of, transferring, selling, assigning, pledging, canceling, concealing, interfering with, or hypothecating any of the Books and Records or the Assets."

{¶ 39} Finally, the March 11 order appointing the Receiver provided that its terms "shall continue in full force and effect unless and until further order of this Court." The trial court did not include Civ.R. 54(B) language in the entry.

{¶ 40} In a separate entry, also issued on March 11, 2025, the trial court denied the motion to vacate the ex parte receivership order and dissolve the receivership. The trial court also ordered the motions to enforce indemnification agreements and authorize

17.

reimbursement of Davian and Kluger for their litigation costs held in abeyance, finding "the Receiver specifically rejected these contracts by notice filed with this Court on December 13, 2024." The trial court noted the businesses "were and remain insolvent and remain in significant default to their creditors[,]" and a stay "preserves any proper claim for reimbursement after a hearing on the merits without burdening the Estate's ability to maximize the recovery and reimbursement to the creditors."

{¶ 41} Appellants filed a timely appeal of the trial court's March 11 order appointing the Receiver, and also filed a timely appeal of the order staying a decision on the motions seeking to enforce the indemnification agreements.

## II. Assignments of Error

{¶ 42} Appellants assert the following assignments of error:

1. The trial court abused its discretion by appointing Mark E. Dottore as the Receiver…, based on Findings of Fact made following an evidentiary hearing…, without a finding that the need for a receiver was established by clear and convincing evidence, and without the movant having established the need for a receiver by clear and convincing evidence in the record.

2. The trial court abused its discretion by appointing Mark E. Dottore ("Dottore") as the Receiver…, based on Findings of Fact made following an evidentiary hearing…, without a finding that Plaintiff would suffer irreparable injury or loss without the appointment of a receiver, and without the movant having established by clear and convincing evidence in the record that it would suffer irreparable injury or loss without the appointment of a receiver.

3. The trial court abused its discretion by entering an order… staying a decision on Defendants' motion to enforce their respective Indemnification and Advancement Agreements… until the final adjudication of the claims set forth in the Complaint at the conclusion of this case, because without being able to be indemnified and receive advances toward the costs of defense,

including without limitation reasonable attorneys' fees, Davian and especially Kluger will not be able to defend themselves properly in this litigation.

{¶ 43} On May 14, 2025, Monroeville filed a motion to dismiss the appeal, arguing a lack of jurisdiction because the March 11 order appointing the Receiver is not a final order, and no timely appeal was taken from the ex parte appointment order. Monroeville further argued that the denial of Davian's and Kluger's motions for enforcement of the indemnification agreements is not a final order.

{¶ 44} As Monroeville raises the issue of this court's subject matter jurisdiction, we address the motion to dismiss the appeal first.

### III. Motion to Dismiss Appeal

{¶ 45} Monroeville seeks dismissal of the appeal, and appellants oppose that motion. The appellants argue that the orders appealed from are final and appealable, as the March 11 order appointing the Receiver is a new receivership order, following evidentiary hearing. Davian and Kluger further contend that the trial court's decision, staying ruling on the motions to enforce the indemnification and advancement agreements, constituted a final order as affecting a substantial right in a special proceeding.

{¶ 46} As Monroeville notes, appellate jurisdiction is limited to the review of final, appealable orders. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.,* 44 Ohio St.3d 17, 20 (1989); Article IV, Section 3(B)(2), Ohio Constitution. Therefore, "an order must be final before it can be reviewed by an appellate court." *Walburn v. Dunlap,* 2009-Ohio-1221, ¶ 13, citing *Gen. Acc.* at 20. The question of appealability is jurisdictional and must be

19.

addressed by this court, with the lack of a final order mandating dismissal of appeals from non-final orders. (Citations omitted) *Caddyshack, LLC v. Ahner,* 2024-Ohio-4609, ¶ 13 (6th Dist.).

{¶ 47} We apply a two-step analysis in determining whether the order on appeal is a final, appealable order. *Caddyshack* at ¶ 14, citing *Gen. Acc.* at 21. "First, [we] must determine whether the order is final within the requirements of R.C. 2505.02." *Id.,* citing *id.* If we conclude the order on appeal is final, we must then consider if Civ.R. 54(B) language is required. *Id.,* citing *id.*

{¶ 48} The parties address the existence of a final order under R.C. 2505.02(B)(2). However, our review of subject matter jurisdiction is not limited to the parties' argument, as the issue of appealability "is a jurisdictional question that this court can – and must – raise sua sponte." *Caddyshack* at ¶ 12, quoting *Kinzel v. Ebner,* 2020-Ohio-4165, ¶ 90 (6th Dist.) (additional citation omitted.). Therefore, we consider whether the March 11 order is a final order based on R.C. 2505.02(B) in its entirety. As pertinent to this appeal, R.C. 2505.02(B) outlines the requirements for a final order, as follows:

> (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment.
>
> (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
> …
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

R.C. 2505.02(A) defines "substantial right," "special proceeding," and "provisional remedy," providing:

(1) "Substantial right" means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect.

(2) "Special proceeding" means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.

(3) "Provisional remedy" means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code.

{¶ 49} In this case, the judgment did not fully adjudicate all claims, as Monroeville's underlying claims for breach of contract, fraud, fraudulent transfer, and the assertion of alter ego liability remain pending. Accordingly, R.C. 2505.02(B)(1) does not apply. The trial court, also, did not include Civ.R. 54(B) language. Civ.R. 54(B) provides:

When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there

21.

is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

{¶ 50} "Civ.R. 54(B), however, is merely a procedural device." *Gen. Acc.,* 44 Ohio St.3d at 21. Inclusion of the "no just reason for delay" language will not permit appeal of a nonfinal order, but it will "transform a final order into a final appealable order." *Whipps v. Ryan,* 2013-Ohio-4334, ¶ 25 (10th Dist.), quoting *Wisintainer v. Elcen Power Strut Co.,* 67 Ohio St.3d 352, 354 (1993) (additional citation omitted.). In some instances, moreover, an otherwise final order may not require Civ.R. 54(B) language to make it so. *Gen. Acc.* at 21.

{¶ 51} Therefore, we must determine if any of the judgments on appeal are final orders under R.C. 2505.02(B)(2) or (4), without the need for inclusion of Civ.R. 54(B) language. *See Chef Italiano Corp. v. Kent State Univ.,* 44 Ohio St.3d 86 (1989), syllabus ('An order of a court is a final, appealable order only if the requirements of both Civ.R. 54(B), if applicable, and R.C. 2505.02 are met.").

{¶ 52} We apply this two-step analysis to each decision appealed.

**1. March 11, 2025 Order Appointing the Receiver**

{¶ 53} The parties dispute whether the March 11 order appointing the Receiver constitutes a final and appealable order. In this case, the trial court appointed the Receiver pursuant to R.C. 2735.01(A)(6) and (7), which provides:

A receiver may be appointed by the supreme court or a judge thereof, the court of appeals or a judge thereof in the judge's district, the

22.

court of common pleas or a judge thereof in the judge's county, or the probate court, in causes pending in such courts respectively, in the following cases:

…

(6) When a corporation, limited liability company, partnership, limited partnership, or other entity has been dissolved, is insolvent, is in imminent danger of insolvency, or has forfeited its corporate, limited liability company, partnership, limited partnership, or other entity rights;

(7) In all other cases in which receivers have been appointed by the usages of equity.

{¶ 54} Monroeville acknowledges that an appointment of a receiver is a final order but argues a timely appeal in this case could only be taken from the ex parte order appointing the Receiver, characterizing the March 11 order appointing the Receiver as an interim order because it refers to the "initial appointment order." Additionally, Monroeville argues that the lack of Civ.R. 54(B) language in the trial court's order renders the March 11 order appointing the Receiver not immediately appealable.

{¶ 55} First, as to whether the March 11 order appointing the Receiver is a final order, we note that the order is new appointment order, adding Gray Data to the receivership and containing all necessary terms and legal findings to constitute a stand-alone appointment of the Receiver for the new receivership estate, independent of the previous ex parte order of appointment. The trial court entered the March 11 order after evidentiary hearing and application of R.C. 2735.01, with the addition of Gray Data to the receivership estate. Thus, the March 11 order is not an interim order governing the ongoing administration of the receivership but is a new appointment over a new receivership estate that included Gray Data. *See, e.g., Gemmell v. Anthony,* 2015-Ohio-

23.

2550, ¶ 17 (4th Dist.) (differentiating between an order that wrests control over property from an appellant, seeking immediate appeal, from an order that merely maintains the business and authorizes the receiver's continued activities).

{¶ 56} Having determined that the March 11 order appointing the Receiver is a separate and independent order related to a new, enlarged receivership estate, we next must consider whether the March 11 order satisfies either R.C. 2505.02(B)(2) or (B)(4). Based on controlling law, we find the March 11 order appointing the Receiver is a final order pursuant to both sections.

{¶ 57} It is well-settled law that an order appointing a receiver is a final order affecting a substantial right in a special proceeding. (Citations omitted) *Lakhi v. Healthcare Choices & Consultants, LLC,* 2007-Ohio-4127, ¶ 32 (10th Dist.); *see also Gemmell v. Anthony,* 2015-Ohio-2550, ¶ 6 (4th Dist.), citing *Forest City Invest. Co. v. Haas,* 110 Ohio St. 188 (1924), paragraph one of the syllabus. The Ohio Supreme Court has also noted that a receivership is a provisional remedy, "*ancillary* to the main action." (Emphasis sic.) *State v. Muncie,* 91 Ohio St.3d 440, 449, quoting *Forest City* at 192; *see also Gemmell,* 2015-Ohio-2550 at ¶ 13 ("a receivership under R.C. 2735.02, et seq. is an ancillary proceeding…an order granting a receivership is a mandate from the trial court that grants or denies the particular relief at issue in that provisional remedy."). Thus, the March 11 order appointing the Receiver is a judgment that affects a substantial right made in a special proceeding, R.C. 2505.02(B)(2) and is also a judgment that grants a provisional remedy, R.C. 2505.02(B)(4).

24.

**{¶ 58}** Finding a final order under both R.C. 2505.02(B)(2) and (B)(4), we must consider whether the trial court needed to include Civ.R. 54(B) language to permit immediate appeal. The trial court did not signal an intent to create a final judgment for purposes of appeal, omitting Civ.R. 54(B) language. However, "R.C. 2505.02 does not require a trial court to indicate its express intent to create a final order. What does matter is whether the order itself satisfies any of the circumstances listed in R.C. 2505.02(B)." *Harbor Island Assoc., Inc., v. Stecks Buckeye Storage Units, LLC,* 2021-Ohio-2969, ¶ 19 (6th Dist.), quoting *State ex rel. O'Malley v. Russo,* 2019-Ohio-1698, ¶ 18 (additional citation omitted.).

**{¶ 59}** The parties dispute whether Civ.R. 54(B) is necessary language, based on a final order pursuant to R.C. 2505.02(B)(2). While there is mixed authority regarding the need for Civ.R. 54(B) language for a final order under R.C. 2505.02(B)(2), we have noted most jurisdictions require Civ.R. 54(B) language and followed suit. *See, e.g. Harbor Island,* 2021-Ohio-2969 at ¶ 25 (6th Dist.); *Caddyshack,* 2024-Ohio-4609 at ¶ 26 (6th Dist.) (noting split among jurisdictions and addressing application of Civ.R. 54(B) in appeal of judicial dissolution).[9] Based on our precedent, therefore, we find the March 11

---

[9] The Second District Court of Appeals in *State v. West,* 2021-Ohio-4682, ¶ 27, fn 2 (2d Dist.) also addressed the split among jurisdictions regarding the necessity for Civ.R. 54(B) language accompanying a final order under R.C. 2505.02(B)(2), noting:
> "While Civ.R.54(B) clearly applies to R.C. 2505.02(B)(1), an order that 'affects a substantial right in an action that in effect determines the action and prevents a judgment,' it is less clear whether Civ.R. 54(B) applies to R.C. 2505.02(B)(2). *See, e.g., Garden v. Langermeier*, 2017-Ohio-972, ¶ 13, fn. 1[(8th Dist.)] (explaining that *Gen. Acc. Ins. Co.* has been

25.

order appearing the Receiver is not immediately appealable as a final order under R.C. 2505.02(B)(2), lacking determination by the trial court that there is no just reason for delay, pursuant to Civ.R 54(B).

{¶ 60} There is no argument by either party whether R.C. 2505.02(B)(4) applies. However, considering this provision, we find the March 11 order is also a final order under R.C. 2505.02(B)(4), as a judgment granting a provisional remedy, ancillary to the underlying action. *See Forest City Inv. Co. v. Haas,* 110 Ohio St. 188, 194 (1924).

{¶ 61} The trial court appointed the Receiver, in part, pursuant to R.C. 2735.01(A)(6), finding Monroeville sufficiently demonstrated that the businesses were insolvent or in imminent danger of insolvency, or in the alternative, that Advisors had forfeited its corporate rights by failing to register as a foreign corporation in Ohio. Monroeville's request for a receiver, moreover, was incidental to the underlying claims against Davian, Kluger, and Advisor, as alleged in Monroeville's complaint. The March 11 order appointing the Receiver, therefore, was incidental to the underlying case. The Receiver's appointment served the purpose of managing the business and property and

---

questioned with respect to R.C. 2502.02(B)(2)); *Guardianship & Protective Servs. [Inc.] v. Setinsek*, [2011-Ohio-6515, ¶ 23 (11th Dist.)] (Wright, J., concurring) (advocating that Civ.R. 54(B) should not apply to R.C. 2505.02(B)(2)); Painter and Pollis, *Ohio Appellate Practice*, Section 2:16 (2019). However, we must follow the Ohio Supreme Court's precedent from *Gen. Acc. Ins. Co.* and apply Civ.R. 54(B) to orders that are otherwise 'final' under R.C. 2505.02(B)(2)." *Zhong v. Liang,* 2020-Ohio-3724, [¶ 18 (8th Dist.)].

26.

paying creditors, as well as conserving "the property for the interested litigants until the issues in the case were finally determined." *Id.; see also Jezerinac v. Dioun,* 2023-Ohio-2882, ¶ 38 (10th Dist.), citing *Forest City* at 194; *In re A.J.S.,* 2008-Ohio-5307, ¶ 20.

{¶ 62} Because the March 11 order appointing the Receiver is a final order under R.C. 2505.02(B)(4), the requirements of Civ.R. 54(B) need not be met, as an order granting a provisional remedy is not a judgment determining any claim in the underlying complaint, and therefore "not subject to the requirements of Civ.R. 54(B)." *Columbus v. State,* 2023-Ohio-195, ¶ 9 (10th Dist.), citing *State ex rel. Butler Cty. Children Servs. Bd. v. Sage,* 95 Ohio St.3d 23, 25 (2002) (additional citation omitted.). However, while Civ.R. 54(B) does not apply, we must still find that both R.C. 2505.02(B)(4)(a) and (b) are satisfied to determine the March 11 order appointing the Receiver is immediately appealable. *Columbus* at ¶ 9.

{¶ 63} A final order under R.C. 2505.02(B)(4) is an appealable order if it grants a provisional remedy, and additionally, the order "in effect determines the action with respect to the provisional remedy and prevents a judgment with respect to the provision remedy" *and* "[t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4)(a) and (b).

{¶ 64} As to the first requirement under R.C. 2505.02(B)(4)(a), the March 11 order appointing the Receiver effectively determined the action with regard to the provisional remedy of a receivership, barring appellants "from securing a later judgment in their favor on that specific issue." *Jezerinac* at ¶ 39, citing *Summit Park Apts., LLC v.* 27.

*Great Lakes Reinsurance (UK), PLC,* 2016-Ohio-1514, ¶ 11 (10th Dist.) In sum, the appointment of the Receiver under R.C. 2735.01 et seq. fully resolved Monroeville's application for a receiver over the business entities, including Gray Data. *Muncie,* 91 Ohio St.3d at 451.

{¶ 65} As to the second requirement under R.C. 2505.02(B)(4)(b), we must determine if denying appellants an immediate appeal would deprive them of a meaningful and effective remedy on appeal after final judgment. "This division of the final order statute recognizes that, in spite of courts' interest in avoiding piecemeal litigation, occasions may arise in which a party seeking to appeal from an interlocutory order would have no adequate remedy from the effects of that order on appeal from final judgment. In some instances, '[t]he proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." (Citations omitted.). *Muncie* at 451.

{¶ 66} In this case, the Receiver was appointed through the March 11 order and granted authority to operate the business entities and preserve the receivership estate for the benefit of the creditors. However, the March 11 order also permits the Receiver to negotiate the sale of assets to pay the debts of the businesses. Pursuant to the terms of the March 11 order, the Receiver may also decide to "reject contracts not deemed to be in the interest of creditors of the estate," such as Davian's and Kluger's indemnification agreements.

28.

{¶ 67} Because the Receiver's authority extends beyond maintaining the status quo of the business to liquidation of assets to pay creditors and rejection of the indemnification agreements, an appeal of the March 11 order after final judgment would not remedy the damage suffered by Davian and Kluger, or their companies, should they ultimately prevail in an appeal after final judgment. In sum, without the ability to challenge the March 11 appointment of the Receiver, the Receiver could liquidate the businesses and deny Davian and Kluger advancement of their attorney fees under the indemnification agreements, and an appeal after final judgment could not reverse the actions of the Receiver, resulting in the "proverbial bell [that] cannot be unrung[.]" *Muncie* at 451.

{¶ 68} Having carefully considered the March 11 order appointing the Receiver, we find the order constitutes a final order under R.C. 2505.02(B)(4)(a) and (b), and Civ.R. 54(B) does not apply. We therefore have jurisdiction to consider the appeal of the March 11 order.

### 2. Stay on Ruling on Motions to Enforce Indemnification Agreement

{¶ 69} Next, we consider whether the trial court's decision to stay a ruling on the motions to enforce the indemnification agreements constitutes a final, appealable order. The parties each consider the trial court's stay on ruling as an implicit denial of the motion. Monroeville argues that the denial of a motion to enforce the agreements and the accompanying findings of fact, conclusions of law denying a motion to dissolve the receivership are not final orders as provided by R.C. 2505.02(B). In response, Davian and Kluger argue that the denial of their motions to enforce the agreements is a final order

29.

under R.C. 2505.02(B)(2) because the denial occurred within the receivership proceeding, and the denial affected a substantial right to retain counsel to defend against allegations in the underlying claims asserted against them by Monroeville.

{¶ 70} As an initial matter, we note that Davian and Kluger filed motions to enforce the indemnification and advancement agreements after the Receiver had rejected those agreements, deeming them contracts that were not in the interest of creditors of the estate. To the extent that Davian and Kluger were seeking the trial court's declaration that the agreements were valid and order enforcement, a *motion* seeking such declaratory relief "is procedurally incorrect and inadequate to invoke the jurisdiction of the court pursuant to R.C. Chapter 2721." *In re J.D.F.,* 2008-Ohio-2793, ¶ 9 (10th Dist.), citing *Fuller v. German Motor Sales, Inc.,* 41 Ohio App.3d 101, paragraph one of the syllabus (1st Dist.1987). If the motions are viewed as a request to overrule the Receiver's decision over a matter specifically within his discretion, however, the trial court's implicit denial and stay on ruling does not represent a final order related to the receivership.

{¶ 71} Appointment and removal of a receiver are final orders under R.C. 2505.02(B)(2) and (B)(4). *Gemmell v. Anthony,* 2015-Ohio-2550, ¶ 2 (4th Dist.); *Whipps v. Ryan,* 2013-Ohio-4334, ¶ 29 (10th Dist.), citing *Lakhi,* 2007-Ohio-4127, ¶ 32 (10th Dist.) (additional citations omitted.); *Tillimon v. Great Lakes Funding, Ltd*., 2006–Ohio–2484, ¶ 11 (6th Dist.). The decision on appeal, however, concerns the Receiver's exercise of his authority and discretion, and the trial court's decision to hold Davian's

30.

and Kluger's motions challenging that authority and discretion in abeyance.[10] The decision appealed, therefore, does not concern an order regarding the creation or termination of the receivership, but instead, concerns a matter within the Receiver's authority and discretion as part of the Receiver's ongoing administration of the assets of the receivership.

{¶ 72} For purposes of R.C. 2505.02(B)(2), other jurisdictions have determined "interim orders that govern the receiver's ongoing administration of the assets… do not affect a substantial right and are not final appealable orders." *Gemmell* at ¶ 9, citing *PNC Bank, N.A. v. Creative Cabinet Sys,, Inc.,* 2014-Ohio-3264 (2d Dist.); *Whipps,* 2013-Ohio-4334 at ¶ 29; *Champaign Natl. Bank v. Preferred Capital, Inc.,* 2009-Ohio-6699 (9th Dist.); *Hall v. Hall,* 2002-Ohio-4363 (11th Dist.). Furthermore, there is nothing in the trial court's order foreclosing the possibility of Davian and Kluger receiving indemnification as part of the Receiver's distribution of the assets, treating Davian and Kluger as creditors of the receivership estate.

{¶ 73} In this case, the decision on appeal makes no determination regarding the potential enforceability of the indemnification agreements, holding any decision in abeyance pending resolution of the claims asserted against Davian and Kluger that might affect the right to indemnification pursuant to the agreements. Therefore, Davian and

---

[10] While not expressly stated, it appears the trial court addressed the motions for indemnification as a potential claim against the receivership estate. Neither Davian nor Kluger have yet filed an answer to the allegations in Monroeville's complaint, and neither have filed a notice of claim in the receivership regarding their claimed contractual rights for indemnification for their attorney fees.

31.

Kluger are asking this court to review the trial court's decision, denying reversal of the Receiver's rejection of the request for advancement of attorney fees from the receivership estate, a matter within the scope of the Receiver's authority and discretion in his administration of the assets.

{¶ 74} The order staying decision on enforceability of the indemnification agreements is also not a final order under R.C. 2505.02(B)(4). While a receivership is a provisional remedy, ancillary to the underlying case, "subsequent interim orders governing the receivership's operations are not ancillary to the main action, but are ancillary to the receivership proceedings, which is itself ancillary." *Gemmell* at ¶ 13. Therefore, there is no clear denial of a provisional remedy, as that term is used in R.C. 2505.02(B)(4), based on an interim order in a receivership proceeding. *Gemmell* at ¶ 13. Moreover, even assuming an interim order could be construed as denying a provisional remedy under R.C. 2505.02(B)(4), the order in this case does not satisfy either R.C. 2505.02(B)(4)(a) or (b). The appointment of the Receiver is the provisional remedy and determining the enforceability of the indemnification agreements does not determine the action regarding the receivership. *Gemmell* at ¶ 14; R.C. 2505.02(B)(4)(a). Furthermore, holding the indemnification determination in abeyance until after resolution of Monroeville's claims against Davian and Kluger does not prevent Davian and Kluger from a meaningful or effective remedy through appeal, as it maintains the status quo until all facts are adjudicated regarding those claims without foreclosing the possibility of indemnification. *Gemmell* at ¶ 17; R.C. 2505.02(B)(4)(b).

32.

{¶ 75} Accordingly, upon careful consideration of the order holding the motions to enforce the indemnification agreements in abeyance, essentially denying the request for advancement of attorney fees from the receivership estate, we find the order is not a final order pursuant to either R.C. 2505.02(B)(2) or 2505.02(B)(4). Therefore, we have no jurisdiction to consider the appeal from this order.

{¶ 76} Having determined only the March 11 order appointing the Receiver is a final, appealable order, we limit our review to the first and second assignments of error, relative to the March 11 order, and dismiss the appeal as to the remaining assignment of error, for want of subject matter jurisdiction over the order staying a decision on the motions to enforce indemnification agreements.

## IV. Analysis

{¶ 77} In their first and second assignments of error, appellants argue that the trial court abused its discretion by appointing the Receiver without a finding that the need for a receiver was supported by clear and convincing evidence. Appellants further argue that the trial court abused its discretion by not terminating the receivership, but instead, expanded the scope of the receivership through the March 11 order appointing the Receiver, because there was not clear and convincing evidence that Monroeville would suffer irreparable harm or loss unless a receiver was appointed. As the assignments of error are interrelated, we address the assignments of error together.

{¶ 78} Appellants challenge the appointment of the Receiver in the March 11 order, arguing the trial court's decision was not based on clear and convincing evidence demonstrating a need for a receiver or that Monroeville would suffer irreparable harm

33.

without the appointment of a receiver.[11] In response, Monroeville argues that the trial court's appointment of a receiver was supported by the evidence and a proper exercise of the trial court's discretion.

{¶ 79} As previously noted, the trial court appointed the Receiver, pursuant to R.C. 2735.01(A)(6) and (7), following an evidentiary hearing. Appointment pursuant to R.C. 2735.01(A)(6) requires a showing that the corporation, is insolvent or "in imminent danger of insolvency" or has forfeited its corporate rights. Appointment under R.C. 2735.01(A)(7) is proper "[i]n all other cases in which receivers have been appointed by the usages of equity."

{¶ 80} In addition to the March 11 order appointing the Receiver, the trial court entered findings of fact and conclusions of law, setting forth specific findings. These findings addressed the inability of Holdings/Gray Data/Advisor to pay creditors and the notice of default served for unpaid invoices for electric services, the relocation of operations from Youngstown to Monroeville and the appointment of a receiver relative to the Youngstown operations, the lack of any corporate records or evidence of new capitalization that demonstrated a future ability to pay creditors, and testimony that demonstrated assets and property of the business and co-located tenants had been converted by individuals operating the business, prior to the appointment of the Receiver.

---

[11] We note that appellants also challenge, in their argument, the ex parte order appointing the Receiver. As the appellants do not appeal from that order, we do not address the arguments relative to the propriety of the ex parte order.

34.

{¶ 81} The appointment of a receiver pursuant to R.C. 2735.01 "is addressed to the sound discretion of the court under all the circumstances." *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69, 73 (1991). Therefore, we review the appointment for an abuse of discretion. (Citations omitted) *Harajli Mgt. & Invest., Inc. v. A&M Invest. Strategies, Inc.,* 2006-Ohio-3052, ¶ 34 (6th Dist.).

{¶ 82} "The concept of 'abuse of discretion' as the basis for determining 'error' of the trial court connotes the right to exercise a sound discretion. Conversely, where a specific action, ruling or order of the court is required as a matter of law, involving no discretion, the test of 'abuse of discretion' should have no application." *Johnson v. Abdullah,* 2021-Ohio-3304, ¶ 37, quoting *Rohde v. Farmer,* 23 Ohio St.2d 82, 89 (1970). An abuse of discretion, based on the "common understanding" of the concept, is "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson* at ¶ 35. Stated differently, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19.

{¶ 83} In challenging the trial court's exercise of discretion in appointing the Receiver, the appellants appear to seek a stricter standard of review, asking this court to review the trial court's decision for an error of law or based on a weight of the evidence standard. However, while the trial court's decision, appointing a receiver must rest on clear and convincing evidence, the "appellate court must not find an 'abuse of discretion where some evidence supports the court's ruling.'" *Fannie Mae v. Clarkwood*

35.

*Apartments LP,* 2025-Ohio-5221, ¶ 31-32, quoting *State ex rel. Commercial Lovelace*

*Motor Freight, Inc. v. Lancaster,* 22 Ohio St.3d 191, 193 (1986).

{¶ 84} "A court in exercising its discretion to appoint or refuse to appoint a

receiver must take into account all the circumstances and facts of the case, the presence

of conditions and grounds justifying the relief, the ends of justice, the rights of all the

parties interested in the controversy and subject matter, and the adequacy and

effectiveness of other remedies." *State ex rel. Celebrezze v. Gibbs,* 60 Ohio St.3d 69, 73,

fn 3 (1991). In arguing error, the appellants point to nothing in the record, indicating the

trial court abused its discretion in considering the facts and circumstances related to the

appointment of a receiver, presented over several days of hearing. Furthermore, after a

thorough review of the record, we find there is evidence to support the trial court's ruling,

including the testimony of Davian and Kluger, who acknowledged the inability of

Advisors or Gray Data to pay outstanding bills and offered no documentary evidence of

future solvency.

{¶ 85} Accordingly, based on the record, we find no abuse of discretion by the

trial court in determining the necessity for a receivership and entering the March 11 order

appointing the Receiver. We find appellant's first and second assignments of error,

challenging the appointment of the Receiver, not well taken.

36.

## V. Conclusion

**{¶ 86}** Finding substantial justice has been done, we affirm the trial court's March 11, 2025 order appointing the Receiver. The appeal of the trial court's decision holding the motions to enforce the indemnification and advancement agreements in abeyance is dismissed as not a final, appealable order. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24(A).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Thomas J. Osowik, P.J.

Gene A. Zmuda, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.